531 A.2d 1133

COMMONWEALTH of Pennsylvania

v.

D. Douglas ROTH, Appellant.

COMMONWEALTH of Pennsylvania

v.

Darrell BECKER, Appellant.

COMMONWEALTH of Pennsylvania

v.

David SOUL, Appellant.

Superior Court of Pennsylvania.

Argued June 3, 1987.

Filed Sept. 28, 1987.

Nicholas E. Poser, Pittsburgh, for appellants.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before DEL SOLE, POPOVICH and MONTGOMERY, JJ.

DEL SOLE, Judge:

Today we consider an appeal from the judgments of sentence stemming from Appellants' convictions of Disorderly Conduct and Failure of Disorderly Persons to Disperse upon Official Order. By their brief, Appellants raise the following issues:

1. whether there lacked sufficient evidence to support Appellants' convictions;

2. whether Appellants' convictions were in violation of their constitutional rights to First Amendment free speech and assembly;

3. whether § 5503(a)(4) of the disorderly conduct statute is unconstitutionally overbroad and vague; and,

4. whether irrelevant and prejudicial evidence was erroneously admitted by the trial court.

Initially, Appellants posit that there lacked sufficient evidence to support these convictions. It is the Commonwealth's position, however, that Appellants have failed to preserve this issue for appellate review insofar as it does not appear in Appellant's post-verdict motions. We have examined Appellants' "Post-trial Motions and Brief in Support Thereof" and find that Appellants have not waived this argument. Appellants' allegations concerning the sufficiency of the evidence are not expressly characterized as such. However, a substantive reading of Appellants' claims leads to the inescapable conclusion that Appellants challenged the sufficiency of the evidence. Thus, we shall address the merits of Appellants' first argument.

In testing the sufficiency of the evidence, we must view the evidence in a light most favorable to the Commonwealth as the verdict winner and draw all reasonable inferences upon which the fact finder could have properly based its verdict. *Commonwealth v. Easley*, 341 Pa.Super. 381, 384, 491 A.2d 868, 869 (1985). A determination must be made as to whether there exists sufficient evidence to enable the trier of fact to find, beyond a reasonable doubt, every element of the crime for which the appellant has been convicted. *Commonwealth v. Stehley*, 350 Pa.Super. 311,

504 A.2d 854 (1986). Having established our appellate scope of review, we examine the evidence as presented by the record.

A few days prior to Easter Sunday 1985 Appellant-Darrell Becker was observed handing out informational material which stated that the Denomination Ministry Strategy (DMS) and the Network to Save the Mon Valley (Network) were planning to conduct a "scrap iron drive" on the lawn of the Shadyside Presbyterian Church (the Church). (N.T., 25). The "scrap iron drive" was to be held on Easter Sunday and would entail the dumping of scrap metal on the Church's property. An additional flier distributed by DMS and the Network warned: [d]on't make us evict the police on Easter Sunday, it could get messy!" (N.T., 30).

In order to quell the occurrence of this event, elders of the Church met with members of the Network, including Appellants Roth and Becker. At this meeting, the DMS and Network representatives requested that Appellants be permitted to address the Church's congregation on Easter Sunday. The Church elders were told that, if they complied with this and other directives, the war against the Presbyterians would be ended. (N.T., 21). However, if the Church did not agree to these terms, a demonstration would be held which the Church would not like. (N.T., 20).

After deliberating on Appellants' request, a special meeting of the Church's Session (the governing body of the Church) was called during which it was decided that Appellants would be refused permission to address the congregation. (N.T., 21). Following this meeting, a spokesman of the DMS and Network was contacted and informed of the Sessions' resolution. (N.T., 22).

Approximately at 10:00 a.m. on April 7, 1985, Easter Sunday, police were stationed outside of the Church and received a radio call that a caravan of DMS and Network people was proceeding towards the Church. (N.T., 30). The group of 20 to 30 individuals was lead by Appellants. Appellants were carrying a box in which was contained a steel beam. (N.T., 31–33). The demonstrators marched up

the sidewalk of Amberson Avenue and came to the church entry walkway where they were stopped by Arthur Gilkes, the Church's representative. (N.T., 33). Mr. Gilkes informed the gathering that they were not welcome at the Church. (N.T., 35). Appellant-Roth's response to this admonition was that they were going to enter the Church and place the scrap metal on the altar. Mr. Gilkes repeated his caution. (N.T., 35).

When it became apparent that the assembly was not going to leave, Mr. Gilkes stepped aside so that members of the Pittsburgh Police Department could deal with the situation. (N.T., 36). Inspector Herman Mitchell reminded the group that they had received an official resolution from the Church that they were not to come onto its property or into its building. (N.T., 55). At this point, the group did not leave the walkway, but talked among themselves as Appellant-Soul read from the Bible. (N.T., 35–36). Assistant Superintendent Ralph Pampena issued a second warning to the demonstrators. (N.T., 69). Appellant-Roth then stated to his followers "let's go in." Appellants then took a step forward onto the Church's walkway. (N.T., 59, 71). Superintendent Pampena proceeded to place Appellants under arrest. (N.T., 71).

Upon reviewing the record, which includes a videotape of the occurrence, we find that the evidence was sufficient to support Appellants' convictions for disorderly conduct. Appellants were charged with the violation of 18 Pa.C.S.A. § 5503(a)(4) which provides:

(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

.　　　.　　　.　　　.　　　.

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

■ That Appellants intended to cause "public inconvenience, annoyance or alarm" is readily apparent from the

record. Appellants attempt to argue that their only intent was to peaceably lay their symbolic offering before the church's altar so that their dissatisfaction with the plight of the poor and unemployed in the Mon Valley might be brought to the attention of certain Church members. However, Appellants' altruistic motives in walking towards the Church's property after repeated warnings are irrelevant. What is of the moment is that Appellants were apprised of the fact that neither their physical presence nor their symbolic offering were wanted on the Church's property. Yet Appellants intentionally disregarded this notice and plodded onward to address an audience that specifically did not wish to receive their message. Clearly, Appellants' actions in this respect manifested the intent to "cause public inconvenience, annoyance, or alarm."

■ The record demonstrates, too, that the Commonwealth proved beyond a reasonable doubt that Appellants' activity on Easter Sunday 1985 created a "hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor". Although case law has not defined a "hazardous" condition in reference to § 5503(a)(4), the accepted meaning is that which involves "danger [or] risk". *American Heritage Dictionary. See State v. Clark*, 39 Or.App. 63, 591 P.2d 752 (1979) (the term "hazardous" found in similar disorderly conduct statute interpreted to mean "involving risk or danger").

The occurrences of that day were steeped in an emotionally charged atmosphere. Some members of the congregation who knew of the demonstrators' plans refrained from attending services that day. (N.T., 93). Those who attended were frightened for their safety as well as for the welfare of the young and elderly members present. (N.T., 83). The fear was grounded partly on the literature concerning the demonstration. (N.T., 82). A certain amount of apprehension was caused by fear of a reoccurrence of a "skunk oil" attack which had been visited upon the Church during a prior Christmas celebration. (N.T., 110).

Accompanying the fear of many was the determination of others not to allow their services to be disrupted. Ushers were stationed at each entrance of the church building to ensure the congregation's safety. Some of these ushers expressed that they would not permit any demonstrators to enter the building. (N.T., 67). Another parishoner stationed himself at the top of the steps leading to the Church nursery so that no one could disturb the children present there. (N.T., 119).

It is apparent from our reading of the record that many of the Church members felt that their Church was under siege while others were determined not to "let the battle be fought" inside their church. (N.T., 83). When Appellants proceeded to disrupt the Church services, albeit peaceably, they in reality engendered a "hazardous" condition. Appellant's conduct of moving towards the Church's property certainly created a dangerous situation in which altercations between the demonstrators and Church members could have occurred.

Likewise, Appellants' activity would not have served any legitimate purpose; that is, conduct which is lawful and constitutionally protected. *See Commonwealth v. Duncan,* 239 Pa.Super. 539, 363 A.2d 803 (1976) ("no legitimate purpose" phrase present in harassment statute found to mean conduct which is not constitutionally protected). We are unconvinced that Appellants' plan to place the steel scrap before the church's altar where it was clearly unwelcome, can be characterized as being either lawful or constitutionally protected. Thus, the final element that the actor's conduct served no legitimate purpose has been shown by the Commonwealth.[1]

1. We have reviewed the videotape of Appellants' arrests. Appellants argue that the videotape supports their contention that they did not take a step forward to gain entrance to the church. Appellants concede only that the videotape shows a barely noticeable movement by the defendants. We disagree. We note from our review of the videotape that the sequence of events was filmed from above Appellant's mid-torsos. Thus, it is impossible to discern whether or not Appellants stepped forward. Moreover, from a careful viewing of the videotape, it is readily perceivable that Appellants made a movement

■ We stress that neither standing on a public sidewalk expressing dissatisfaction with the status quo nor reading from the Bible are grounds on which Appellants' convictions rest. Such activity is constitutionally protected as an exercise of the right to free speech. However, Appellant's action transgressed from peaceful protest to civil disobedience when, despite warnings to the contrary, they moved to gain entry of a church in which they were adamantly unwelcome.

■ Next, Appellants' allege, and the Commonwealth concedes, that there was insufficient evidence to support their convictions of Failure of Disorderly Persons to Disperse upon Official Order. 18 Pa. C.S.A. § 5502. That offense is defined as follows:

[w]here three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree.

The gravamen of this section is the failure to obey an order by a police officer or other public official to disperse when three or more persons are engaged in a course of disorderly conduct, as defined by § 5503 of the Crimes Code. *Commonwealth v. DeFrancesco*, 481 Pa. 595, 607, 393 A.2d 321, 327 (1978).

We agree that insufficient evidence was adduced during trial that would establish Appellants' violations of § 5502. Appellants were told by the police to disperse prior to their taking a step towards the Church's property. (N.T., 59, 71). We have concluded, *supra*, that Appellants' conduct did not reach the level of disorderly conduct until they moved

towards the church. Accordingly, the videotape in no way contradicts the testimony by the Commonwealth's witnesses that Appellants proceeded to step towards the Church in order to realize their goals.

forward. The police's order to disperse was issued prematurely. Thus, the element of disorderly conduct, which is essential to sustaining a § 5502 conviction, was not present. Likewise, we note that Appellants were immediately arrested following their engagement in disorderly conduct. Accordingly, we must vacate the judgments of sentence for these convictions.

Second, Appellants posit that the disorderly conduct convictions are in violation of their constitutional rights to First Amendment free speech and assembly. Essentially, Appellants argue that these constitutional rights were infringed upon when the police arrested them as they demonstrated on a public sidewalk in front of the Church. In support of this position, Appellants cite a bastion of United States Supreme Court cases which discuss the dynamics of First Amendment rights. *See: Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (fundamentals of safeguards afforded demonstrators on public sidewalk discussed); *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (expressive activity on public street constitutionally protected when it was directed at an individual and did not incite imminent lawfulness); *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) (civil rights demonstration in front of South Carolina State House constitutionally protected since defendants engaged in no violence and police protection was sufficient to meet foreseeable disorder); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (actions by civil rights protestors constitutionally protected when the atmosphere was found not to be explosive and the number of police present was sufficient to handle the crowd).

We duly recognize that public streets and sidewalks have been scrupulously honored as forums for assembly and the communication of thoughts between citizens. Moreover, this interchange of ideas may occur in a variety of ways including the spoken word and symbolic gestures. This, and much more, falls within the aegis of the First Amendment.

■ In the case at bar, we agree with Appellants' assertion that "the protections of the First Amendment extend not only to the statements made by [the] defendants in this case, but to their expressive activity as well, including both their procession along the sidewalk and their holding of a symbolic offering while standing on the *public sidewalk* in front of the Church." (Brief for Appellants, 29) (Emphasis supplied). Nevertheless, Appellants' arguments in this respect are awry by virtue of the fact that Appellants were not arrested for their misuse of the public sidewalks. To the contrary, the public sidewalks in front of the Church were appropriate areas on which to protest the predicament of the poor and unemployed of the Mon Valley. It was only when Appellants maneuvered to enter Church property so as to inflict their viewpoint on its congregation did Appellants abandon the protection afforded by the First Amendment. Likewise, it was at this point the elements of disorderly conduct coalesced. On these grounds Appellants' convictions rest. Thus, Appellants' attempt to categorize their arrests as abridgements of their constitutional rights must fail.

Parenthetically, we note that the Commonwealth advances arguments on the public versus private property dichotomy associated with First Amendment rights. However, that precise issue is not before us today. By their Reply Brief, Appellants specifically state that they do not base their constitutional arguments on the contention that they had a First Amendment right to enter Church property. (Reply Brief for Appellants, 15). Insofar as Appellant has not raised this particular issue on appeal, we shall not explore its merits.

■ Third, Appellants assert that § 5503(a)(4) of the disorderly conduct statute is unconstitutionally overbroad and vague. We have reviewed Appellants' post-verdict motions and note that the vagueness issue was not raised therein. It is established in this Commonwealth that the failure to raise an issue in post-verdict motions results in the preclusion of its review by an appellate court. Insofar as the

vagueness issue was not preserved in Appellants' post-verdict motions, we are constrained to find that it has been waived.

We shall consider Appellants' allegation that § 5503(a)(4) is unconstitutionally overbroad. An overbroad statute characteristically authorizes the punishment of constitutionally protected conduct. A statute need not be vague in order to be overbroad. *Commonwealth v. Stenhach*, 356 Pa.Super. 5, 514 A.2d 114, 124 (1986). Indeed, " 'a clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct.' " *Id.*, 356 Pa.Superior Ct. at 25, 514 A.2d at 124, *quoting Grayned v. City of Rockford*, 408 U.S. 104, 114–5, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). The crucial question is whether the statute prohibits that which may not be punished.

■ Specifically, Appellants challenge two aspects of the language found in § 5503(a)(4). The first portion is the phrase "serves no legitimate purpose". Appellants charge that this language is overbroad because it could easily be applied to constitutionally protected expressions. We disagree. As established, *supra*, activity which serves no legitimate purpose is that which is not constitutionally safeguarded. Thus, contrary to Appellants' viewpoint, this particular language in the statute could not be interpreted to prohibit activity which is protected under the First Amendment. Moreover, we note that in *Commonwealth v. Duncan, supra*, the appellant challenged the constitutionality of a harassment statute containing the identical language on grounds that it was vague and overbroad. In that case, we held that the statute was neither vague nor overbroad inasmuch as it "specif[ied] that the conduct must be of a non-legitimate nature—conduct which is not constitutionally protected." *Id.*, 239 Pa.Superior Ct. at 549, 363 A.2d at 808. For these reasons, we find that the phrase, "serves no legitimate purpose" does not render § 5503(a)(4) overbroad on its face.

■ Equally unconvincing is Appellants' attempt to demonstrate the overbreadth of this phrase by applying it to the

facts of this case. Appellants erroneously characterize their convictions as the trial court's regulation of expressive activity on the basis of its content. (Appellants' Brief, 41). The record does not support this position. Appellants' convictions under § 5503(a)(4) were not content-based. Rather, there was sufficient evidence adduced at trial from which to conclude that Appellants' plan of disruption to communicate their message did not constitute a legitimate purpose. We emphasize that it was Appellants' scheme to disturb, not the topic of their protest, that served no legitimate purpose and was unprotected by the First Amendment. Accordingly, we cannot agree that this particular application of the phrase demonstrates its overbreadth.

Next, Appellants charge that the language "creates a hazardous or physically offensive condition" is overbroad. We find not. Our Supreme Court has held that a state, in a valid exercise of its police power, may enact laws to protect the public peace even though such ordinances may curtail free speech or assembly. *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54, 58 (1980). *See: Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (right of free speech found not to be absolute where language tends to incite an immediate breach of the peace). Instantly, we do not share Appellants' view that the phrase "creates a hazardous or physically offensive condition" could be used to punish anyone exercising a protected First Amendment right. Our legislature specifically limited the breadth of the statute in subsection (a) which states that the offense of disorderly conduct requires an "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Thus, we are of the opinion that the statute demonstrates a narrowly confined exercise of the Commonwealth's police powers, which cannot be utilized to prohibit constitutionally protected conduct.

Finally, Appellants allege that the trial court erred by admitting into evidence irrelevant testimony which was prejudicial. Appellants point to three specific portions of

the testimony adduced at trial. The first concerns a statement made by a Church member that an anonymous telephone caller threatened to unload truckfulls of scrap metal on Church grounds. (N.T., 26). The second is a witness' testimony that he had heard reports that Church members intended to use force if the demonstrators entered the church. (N.T., 67). The third relates to statements made by another Church member concerning a skunk oil attack which occurred one year previous to the Easter Sunday incident. (N.T., 102).

In determining whether evidence was properly admitted, it is axiomatic that the trial judge has broad discretion in allowing or excluding evidence. *Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96, 99 (1984). A basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant. "Evidence is relevant when it tends to establish facts in issue or in some degree advances the inquiry and thus has probative value. Not all relevant evidence is admissible, however, and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury." *Id.*, 324 Pa.Superior Ct. at 15, 471 A.2d at 99–100.

As previously noted, one of the elements of the offense of disorderly conduct is the requirement that Appellants either intentionally or recklessly caused public inconvenience, annoyance or alarm. It is patently clear that these three excerpts of the testimony elicited at trial tended to prove this element of the crime for which Appellants were arrested. Evidence indicating that Church grounds would be littered, that some of its members were apprehensive, and that others would resort to physical force in order to keep the demonstrators out certainly was relevant in this respect. Therefore, we find no abuse of discretion by the trial court in admitting this evidence.

Accordingly, the judgments of sentence are affirmed in part, and vacated in part.