J-S35033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LISA A. KOZERO, | |
| Appellant | No. 3592 EDA 2014 |

Appeal from the Judgment of Sentence November 18, 2014
in the Court of Common Pleas of Carbon County
Criminal Division at No.: CP-13-CR-0001038-2013

BEFORE:  MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                              **FILED JULY 08, 2015**

Appellant, Lisa A. Kozero, appeals from the judgment of sentence imposed on November 18, 2014, following her jury conviction of disorderly conduct.[1]  On appeal, Appellant claims that the evidence was insufficient to sustain her conviction and that the disorderly conduct statute is unconstitutional as applied to her.  We affirm the judgment of sentence.

We take the underlying facts and procedural history in this matter from the trial court's February 11, 2015 opinion.

> On October 17, 2013, [Appellant's] son, Joseph Kozero (hereinafter "Joseph"), walked to the Lehighton Borough Police Station (hereinafter the "police station") to report that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5503(a)(4).

[Appellant] was missing after she failed to come home for several days, answer her cell phone or call Joseph or any other family members since October 15th. Upon arriving at the police station, Joseph provided Officer Matthew Arner with a written statement relative to [Appellant's] disappearance. Officer Arner attempted to contact [Appellant] via her cell phone. He was not successful as the call went straight to [Appellant's] voicemail. Approximately fifteen (15) to twenty (20) minutes after Joseph's arrival, [Appellant] telephoned the police station. Officer Arner took the call and [Appellant] relayed to him that she would "be right there." Within five (5) minutes of speaking with Officer Arner, [Appellant] arrived at the police station in an extremely agitated state. Officer Arner attempted to explain to [Appellant] why he requested that she come to the police station, at which point she began yelling at Joseph. Officer Arner ushered [Appellant] into the police station's interview room. She then became boisterous and confrontational. At that time, Officer Arner, Detective Scott Prebosnyak, and Joseph were inside the interview room with [Appellant].

[Appellant] subsequently attempted to leave the interview room and was advised by Officer Arner and Detective Prebosnyak that she was not free to go as there were two outstanding warrants for her arrest.[2] As [Appellant] attempted to leave the interview room, Officer Arner grabbed her arm and elbow, at which point [Appellant] began tucking her arms at her sides. While being restrained, [Appellant] was screaming profanities at the officers. Officer Neil Ebbert, who was in the patrol room, which is situated in the police station twenty (20) to twenty-five (25) feet from the interview room and behind two closed doors, went to assist Officer Arner and Detective Prebosnyak upon hearing [Appellant] screaming and yelling. Officer Ebbert entered the interview room and observed Officer Arner and Detective Prebosnyak attempting to restrain [Appellant]. The officers placed [Appellant] against the interview table, during which time she continued to struggle and flail her arms. At least nine (9) times, the officers instructed [Appellant] to stop resisting and informed her that she was under arrest. However, [Appellant] refused to comply with the

_____

[2] At trial, the parties stipulated to the validity of the outstanding bench warrants. (*See* N.T. Trial, 9/11/14, at 52).

officers' orders. The officers were required to use substantial force to place [Appellant] under arrest. Officers Arner and Ebbert were attempting to pull [Appellant's] arms out from under her while Detective Prebosnyak was behind [Appellant] trying to prevent her from getting up. Moreover, even after [Appellant] was in handcuffs and instructed to keep her voice down, she continued yelling. [Appellant] was then placed in a holding cell.

As a result of her actions on October 17, 2013, [Appellant] was charged with one count of resisting arrest and one count of disorderly conduct. On September 12, 2014, following a two-day jury trial, [Appellant] was found not guilty of resisting arrest and guilty of disorderly conduct. On November 18, 2014, [Appellant] was sentenced to a term of imprisonment in the Carbon County Correctional Facility for a period of not less than seven (7) days nor more than one (1) year. [Appellant] was given a credit of seven (7) days time served against her sentence and was immediately paroled.

(Trial Court Opinion, 2/11/15, at 1-4) (footnotes and record citations omitted).

On December 17, 2014, Appellant filed the instant, timely appeal. On December 18, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on January 2, 2015; on February 11, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I.   Whether the evidence was sufficient to support [Appellant's] conviction for [d]isorderly conduct under 18 Pa.C.S.A. § 5503(a)(4) when [Appellant's] conduct did not create a hazardous condition?

II.  Whether the [d]isorderly conduct statute, 18 Pa.C.S.A. § 5503(a)(4), was unconstitutional as applied to [Appellant]

as it criminalized speech that was protected by the First Amendment of the United States Constitution?

(Appellant's Brief, at 4).

In her first issue, Appellant claims that the evidence was insufficient to sustain her conviction for disorderly conduct because her actions did not create a hazardous condition because "there [were] three officers at the scene [who were] able to quickly get the situation under control to prevent any injury." (Appellant's Brief, at 9).

Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted) (emphasis added).

- 4 -

"A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [s]he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."  18 Pa.C.S.A. § 5503(a)(4).  Appellant only challenges the sufficiency of the evidence as to the final element:  whether she created a hazardous or physically offensive condition.  (**See** Appellant's Brief, at 9-14).

Our Court has defined a hazardous condition as one that involves "danger [or] risk."  **Commonwealth v. Roth**, 531 A.2d 1133, 1137 (Pa. Super. 1987), *appeal denied*, 541 A.2d 1137 (Pa. 1988) (citations omitted). We have stated that, "[t]he dangers and risks against which the disorderly conduct statute are directed are the possibility of injuries resulting from public disorders."  **Commonwealth v. Williams**, 574 A.2d 1161, 1164 (Pa. Super. 1990).  Lastly, we have noted that "[t]he reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments."  **Commonwealth v. Reynolds**, 835 A.2d 720, 731 (Pa. Super. 2003) (citation omitted).

Herein, Appellant arrived at the Lehighton Borough Police Station, which was open to the public from 8:30 a.m. through 4:30 p.m., during normal business hours.  (**See** N.T. Trial, 9/11/14, at 39-40, 45-46, 59). Police Officer Arner testified that after he explained to Appellant why she was there and took her to the interview room where her son was waiting she

started yelling and became "agitated . . . loud . . . boisterous . . . [and] confrontational." (*Id.* at 45, *see id.* at 44). Appellant was screaming so loudly that Officer Ebbert heard her at a distance of twenty to twenty-five feet away and behind two closed doors. (*See id.* at 131). Although advised by the police that she could not leave because of two outstanding warrants, Appellant ignored them and attempted to leave. (*See id.* at 96-97). As the officers attempted to place Appellant under arrest, she actively resisted them by flailing her arms and legs, and placing her arms under her so that the police could not put them behind her back to handcuff her. (*See id.* at 53-56, 73-76, 134-35). Officers issued at least nine warning to Appellant to stop resisting. (*See id.* at 55, 75). It took three police officers to subdue her. (*See id.* at 142-43). Officer Arner testified that they could not use pepper spray or a taser to subdue Appellant because doing so in such a small room would have subjected Appellant's older son, the officers, and Appellant's younger son and his girlfriend, who were seated in the hallway outside the interview room, to a greater risk of harm. (*See id.* at 57-59).

In *Commonwealth v. Lopata*, 754 A.2d 685 (Pa. Super. 2000), the appellant, a high school student, became involved in an altercation with another student in the cafeteria. *See Lopata*, *supra* at 687. A teacher intervened and asked both students to go into the hall with him. *See id.* The appellant refused, swung his arms around knocking over a chair, and swore at the teacher, causing other students to back away from the area.

*See id.* On appeal, the appellant argued that this conduct was insufficient to sustain a conviction for disorderly conduct. *See id.* at 688. This Court disagreed, stating that "there was ample evidence to find that Appellant . . . created a condition that was hazardous or physically offensive to the other students in the cafeteria." *Id.*

In *Commonwealth v. Love*, 896 A.2d 1276 (Pa. Super. 2006), *appeal denied*, 940 A.2d 363 (Pa. 2007), the appellant was a witness for the respondent, his stepson, in a Protection from Abuse (PFA) hearing. *See Love*, *supra* at 1279. After the trial court issued the PFA order, the appellant and his wife became "vocally agitated, angry, loud, and disruptive." *Id.* The deputy sheriffs assigned to the courtroom issued several instructions to the appellant and his wife to be quiet and return to their seats; the couple ignored the instructions. *See id.* When a deputy sheriff approached the wife, the appellant intervened, placing an arm on the sheriff's chest. *See id.* The sheriff removed the appellant from the courtroom, and when the appellant observed other deputies escorting his wife from the courtroom, he resumed yelling and the deputy sheriff had to restrain him. *See id.*

On appeal, the appellant argued that the evidence was insufficient to sustain his conviction for disorderly conduct because his behavior did not create a hazardous or physically offensive condition. *See id.* at 1280, 1286. We disagreed, holding that "[i]nherent in the act of physically attempting to

impede a law enforcement officer from carrying out his or her official duties in the public arena is the risk of creating a condition hazardous or physically offensive in nature." *Id.* at 1286.

Appellant acknowledges that the holdings in *Lopata* and *Love* imply that the evidence in the instant matter is sufficient to demonstrate that Appellant created a hazardous or physically offensive condition. (*See* Appellant's Brief, at 11-12). Nonetheless, Appellant attempts to distinguish both by arguing that, in the instant matter, the officers had control over the situation while in *Lopata* a single teacher was trying to control two students in a crowded cafeteria and, while acknowledging that several deputies were present in *Love*, claims that they had to contend with two offenders and a crowded courtroom. (*See* Appellant's Brief, at 12-13). However, Appellant points to nothing in either case that would support this theory.

Here, Appellant, while yelling so loudly that she could be heard through two doors, actively attempted to prevent the police from arresting her, and physically flailing around in a confined space in such a manner that she created both a risk to the police officers and to her older son. Thus, there is ample evidence to show that Appellant created a hazardous or physically offensive condition in a police station that was open to the public. Appellant's claim that the evidence was insufficient to sustain her conviction lacks merit. *See Love*, *supra* at 1286; *Lopata*, *supra* at 688.

In her second issue, Appellant claims that her conviction was based upon her conduct of yelling and cursing at the police and thus was speech "protected by the First Amendment because it was directed at police officers creating little risk that it would lead to violence." (Appellant's Brief, at 14). Accordingly, Appellant contends that 18 Pa.C.S.A. § 5503(a)(4) is unconstitutional as applied to her.[3] (**See id.** at 15-19). We disagree.

It is long settled that the First Amendment does not bar a conviction for disorderly conduct under Pennsylvania Law. **See Starzell v. City of Philadelphia, Pennsylvania**, 533 F.3d 183, 204 (3d. Cir. 2008).[4] An individual can be found guilty of disorderly conduct, without offending the First Amendment, "if in the presence of members of the general public [s]he shouts obscenities although the principal intent of the defendant may have been to insult the police rather than to cause [p]ublic inconvenience, annoyance, or alarm." **Commonwealth v. Hughes**, 410 A.2d 1272, 1274 (Pa. Super. 1979) (citation and internal quotation marks omitted). "[I]t is well-settled in our Commonwealth that one may be convicted of disorderly

_____

[3] Appellant acknowledges that the disorderly conduct statute is facially constitutional. (**See** Appellant's Brief, at 15).

[4] We note "decisions of the federal district courts . . . are not binding on Pennsylvania courts, even when a federal question is involved. Nevertheless, these decisions are persuasive authority and helpful in our review of the issue presented." **Dietz v. Chase Home Finance, LLC**, 41 A.3d 882, 886 n.3 (Pa. Super. 2012) (citation omitted).

conduct for engaging in the activity of shouting profane names and insults at police officers on a public street while the officers attempt to carry out their lawful duties." ***Commonwealth v. Pringle***, 450 A.2d 103, 105-06 (Pa. Super. 1982). In ***Commonwealth v. Mastrangelo***, 414 A.2d 54 (Pa. 1980), *appeal dismissed*, 449 U.S. 894 (1980), the appellant yelled obscenities at a meter maid ticketing his car. When the appellant saw the meter maid the next day, he again yelled obscenities and followed her until she left the area, despite her requests that he desist, and so frightening her that she could not patrol the area for a week. ***See id.*** at 55-56. Appellant argued, in part, that the disorderly conduct statue was unconstitutional as applied to him. ***See id.*** The Pennsylvania Supreme Court disagreed, stating:

> It is clear in the instant case that appellant was not exercising any constitutionally protected right; rather, in a loud, boisterous and disorderly fashion, he hurled epithets at the meter maid which we believe fit the . . . definition of fighting words. Even under our narrow construction of the disorderly conduct statute, we can find no merit in appellant's argument that the statute was invalid as applied to him.

***Id.*** at 58; ***cf. Commonwealth v. Hock***, 728 A.2d 943, 946-47 (Pa. 1999) (single epithet uttered in normal tone of voice, while appellant was walking away from police office and no bystanders were present did not constitute "fighting words" and, thus, evidence insufficient to sustain conviction for disorderly conduct).

Initially, we note that, unlike in **Hughes**, **Mastrangelo**, **Pringle**, and **Hock**, Appellant was not charged with violations of 18 Pa.C.S.A. §§ 5503(a)(2) or (3), which prohibit unreasonable noise and obscene language, respectively, but solely with creating a hazardous or physically offensive condition in violation of 18 Pa.C.S.A. § 5503(a)(4). Thus, the Commonwealth did not charge her with an offense that directly targeted her speech. Secondly, in arguing that Appellant's arrest was based on protected speech directed against the police, Appellant improperly views the facts in the light most favorable to her, not in the light most favorable to the Commonwealth. (**See** Appellant's Brief, at 18). Thirdly, we are unpersuaded by Appellant's attempt to distinguish **Mastrangelo** by arguing that, because the speech in the instant matter was directed toward the police rather than to a meter maid, **Mastrangelo** is somehow inapplicable. (**See** Appellant's Brief, at 18 n.4). Lastly, Appellant completely ignores this Court's decision in **Roth**, **supra**, whose analysis of the distinction between protected First Amendment activity and activity which constitutes disorderly conduct, we find persuasive.

In **Roth**, there was an on-going dispute between a church and a group of protestors; the protestors announced their intention of holding a protest and dumping scrap metal on church property on Easter Sunday. **See Roth**, **supra** at 1135-36. On Easter Sunday, the protestors marched in front of the church but were told by a church official that they were not welcome on

- 11 -

church property. *See id.* at 1136. When the protestors refused to abide by this rule, local police warned them not to come onto church property, however, the protestors attempted to do so and the police arrested them. *See id.* On appeal, the appellants challenged their convictions pursuant to 18 Pa.C.S.A. § 5503(a)(4), in part, on First Amendment grounds. *See id.* at 1138. In upholding the conviction, our Court distinguished between those activities which were protected by the First Amendment, protesting on public property, and those which were not. *See id.* at 1138-39. We stated:

> In the case at bar, we agree with Appellants' assertion that the protections of the First Amendment extend not only to the statements made by [the] defendants in this case, but to their expressive activity as well, including both their procession along the sidewalk and their holding of a symbolic offering while standing on the public sidewalk in front of the Church. Nevertheless, Appellants' arguments in this respect are awry by virtue of the fact that Appellants were not arrested for their misuse of the public sidewalks. To the contrary, the public sidewalks in front of the Church were appropriate areas on which to protest the predicament of the poor and unemployed of the Mon Valley. It was only when Appellants maneuvered to enter Church property so as to inflict their viewpoint on its congregation did Appellants abandon the protection afforded by the First Amendment. Likewise, it was at this point the elements of disorderly conduct coalesced. On these grounds Appellants' convictions rest. Thus, Appellants' attempt to categorize their arrests as abridgements of their constitutional rights must fail.

*Id.* (internal quotation marks and record citation omitted).

Likewise, in the instant matter, the police did not arrest Appellant and charge her with disorderly conduct for engaging in protected First Amendment activity or because of the content of any statements she made to police. Rather, while the police were attempting to arrest her on

outstanding warrants, she created a disturbance by engaging in aggressive, loud, and boisterous behavior, physically flailing about in an attempt to prevent the arrest. There is simply no merit to Appellant's claim that the disorderly conduct statute is unconstitutional as applied to her. **See Mastrangelo**, **supra** at 58; **Roth**, **supra** at 1138-39.

Appellant's issues do not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Mundy concurs in the result.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015