J-S07028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JEFFREY SCOTT YODER :
:
Appellant : No. 702 WDA 2021

Appeal from the Judgment of Sentence Entered May 18, 2021
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002670-2019

BEFORE: OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: MAY 02, 2022**

Jeffrey Scott Yoder ("Yoder") appeals from the judgment of sentence imposed following his conviction for defiant trespass and disorderly conduct.[1] We affirm the judgment of sentence.

The relevant factual and procedural history is as follows. On the evening of August 4, 2019, Yoder entered the American Legion post in Erie with his "comfort cat" and a silver handgun tucked into his waistband. N.T., 4/9/21, at 24. The American Legion, which requires a membership for entry, prohibits its members from bringing firearms inside its posts. **Id**. at 26. This prohibition is verbally communicated to all new members and is also

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3503(b)(1)(i), 5503(a)(4).

prominently displayed on large signs near the main entrance and behind the bar at the Erie post. *Id*. at 27, 32.

Dale Hunter, a member of the board of directors of the American Legion's Erie post, was inside the establishment that evening, and saw Yoder enter with the gun in his waistband; he noted that Yoder's gun was "visible to anybody who saw him." *Id*. at 24. Hunter approached Yoder and told him to leave due to the prohibition against firearms. *Id*. at 28. Yoder refused and walked toward the bar. *Id*. at 28-29. Bartender Stacey Moonitz also saw Yoder enter the club with his cat and a firearm and heard him yell at several patrons before Hunter told him to leave. *Id*. at 39, 41.

Hunter called the police; however, Yoder left before they arrived. *Id*. at 29-30. Police located Yoder a couple of blocks away, confiscated his loaded firearm, and told him not to return to the American Legion post. *Id*. at 55-59. Shortly thereafter, Yoder returned to the American Legion post. *Id*. at 42. Moonitz observed him "screaming and yelling," and saying that "it's his right. We can't do this to him, he's paid his dues. He has a membership. He's a vet." *Id*. at 42-43. After responding to a second call reporting that Yoder had returned to the American Legion post, police took him into custody. *Id*. at 59.

The Commonwealth charged Yoder with defiant trespass and disorderly conduct. Following a trial, a jury convicted him of both charges. On May 18, 2021, the trial court sentenced Yoder to one year of probation for defiant trespass and a concurrent year of probation for disorderly conduct.

Yoder filed a post-sentence motion which the trial court denied. Yoder filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Yoder raises the following issues for our review:

1. Whether the Commonwealth failed to present sufficient evidence to find [Yoder] guilty beyond a reasonable doubt of defiant trespass and disorderly conduct?

2. Whether [Yoder's] sentence is manifestly excessive, clearly unreasonable, and inconsistent with the objectives of the sentencing code?

Yoder's Brief at 3.

In his first issue, Yoder challenges the sufficiency of the evidence supporting his convictions. Our standard of review of a sufficiency claim is as follows:

[W]e evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused[] beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotations omitted). The fact-finder is free to believe all, part, or none

of the evidence presented, and it determines the credibility of the witnesses. ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa. Super. 2013) (*en banc*).

We first address Yoder's challenge to the sufficiency of the evidence supporting his conviction for defiant trespass. The Crimes Code defines defiant trespass as follows: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: [] actual communication to the actor . . .." 18 Pa.C.S.A. § 3503(b)(1)(i).

Yoder argues that the evidence was insufficient for the jury to find that he knew he was not licensed or privileged to enter the American Legion or that he remained therein despite "actual notice of trespass." Yoder's Brief at 8. He claims he was a member in good standing who used his key card to gain entry to the post initially, and that he was permitted to re-enter the post a second time. Yoder additionally argues that his membership was never formally revoked by authorized personnel, and he was not given any notice against trespass. ***Id***.

The trial court considered Yoder's sufficiency challenge to his conviction for defiant trespass and determined it lacked merit. The court reasoned:

> At trial, the Commonwealth presented evidence that [Yoder], as a long-time member of the American Legion, was aware that no weapons were allowed when he entered . . . with a gun visible in his waistband. Dale Hunter testified that [Yoder] was aware he was not allowed in the American Legion with a firearm:

[Prosecutor:] Is the rule prohibiting the possession of a firearm within the establishment communicated to members?

[Hunter:] Yes

[Prosecutor:] How were those rules communicated?

[Hunter:] There are signs posted. There are rules that are gone over when you obtain your membership when you first get it, so you would have known no weapons allowed.

* * * *

[Prosecutor:] And you said that Mr. Yoder had been going there for years, a period of years before this incident.

[Hunter:] Correct.

[Prosecutor:] So for a period of years, Mr. Yoder would have known he's not supposed to be bringing guns into the American Legion?

[Hunter:] Correct.

* * * *

[Prosecutor:] You told him to leave. And why did you tell him to leave?

[Hunter:] Because no guns [were] allowed.

[Prosecutor:] And that's a well-known rule?

[Hunter:] Well-known rule.

[Prosecutor:] And how did Mr. Yoder respond to you when you asked him to leave?

[Hunter:] That he wasn't going to.

[N. T., 4/9/21, at 24-26, 27-28.]

Thus, the Commonwealth presented sufficient evidence to support a guilty verdict on the defiant trespass charge as testimony established that [Yoder] knew he was not licensed or privileged to enter the American Legion with a weapon and that he entered or remained where notice against trespass was given by actual communication.

Trial Court Opinion, 9/16/21, at 2.

Viewing the evidence in the light most favorable to the Commonwealth, along with all reasonable inferences therefrom, we conclude the evidence was sufficient to establish the elements of defiant trespass. The Commonwealth presented evidence that the American Legion does not permit patrons to enter with firearms; new members are informed of this prohibition; Yoder was a member; two signs prohibiting firearms are prominently posted in the establishment; and Yoder was specifically told to leave because he entered with a visible firearm, but he refused to do so. Thus, the evidence was sufficient for the jury to convict Yoder of defiant trespass. *See Commonwealth v. Wanner*, 158 A.3d 714, 718 (Pa. Super. 2017) (rejecting a sufficiency challenge to a defiant trespass conviction where the appellant entered a fur shop posing as a customer and then refused to leave despite actual notice of trespass in the form of "multiple commands" to leave).

We next address Yoder's challenge to the sufficiency of the evidence supporting his conviction for disorderly conduct. The Crimes Code provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,

he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). A "hazardous condition" within the meaning of the statute is one that "involves danger or risk." *Commonwealth v. Williams*, 574 A.2d 1161, 1164 (Pa. Super. 1990).

Yoder maintains that the Commonwealth "failed to present any evidence of [his] intent . . . to intentionally or recklessly cause public inconvenience, annoyance or alarm," or that he created a hazardous situation. Yoder's Brief at 9. He thus challenges the *mens rea* of the offense and the finding that he created a hazardous situation.[2]

The trial court considered Yoder's sufficiency challenge to his disorderly conduct conviction and determined that it, too, lacked merit. The court explained its reasoning as follows:

> As to the disorderly conduct charge, Stacy Moonitz testified about what transpired in the American Legion after [Yoder] was asked to leave:
>
> [Prosecutor:] And this was almost two years ago, August 4, 2019. Describe the commotion that Jeffrey Yoder caused at the American Legion, please.
>
> [Moonitz:] He came into the club with a support cat and a firearm.

---

[2] Yoder presents no challenge in his brief to the "no legitimate purpose" or "public" elements of the offense. *See* 18 Pa.C.S.A. § 5503(a)(4), 5503(c).

[Prosecutor:] Can you describe generally how he was interacting with the other members or patrons of the American Legion[?]

[Moonitz:] It came down to an all-out screaming match.

[Prosecutor:] And how long were these—how long was Mr. Yoder in there yelling and causing a scene?

[Moonitz:] 10 minutes, if that.

[N. T., 4/9/21, at 39-41.]

Thus, the Commonwealth presented sufficient evidence to support a guilty verdict on the charge of disorderly conduct as [Yoder] caused a public inconvenience, annoyance, or alarm which served no legitimate purpose.

Trial Court Opinion, 9/16/21, at 3.

Viewing the evidence in the light most favorable to the Commonwealth, and granting all reasonable inferences therefrom, we conclude the evidence was sufficient to establish the *mens rea* for disorderly conduct and that Yoder created a "hazardous condition." The Commonwealth presented evidence that Yoder intentionally entered the American Legion with a loaded firearm, despite advanced notice and prominent signage prohibiting firearms. When asked to leave, Yoder refused and yelled at several patrons, which risked an altercation, and resulted in a call to police. Even after police admonished Yoder not to return to the American Legion post, Yoder returned and began screaming about his perceived right to be there, until another call was made to police. The evidence was thus sufficient for the jury to find that Yoder intended to

create, or recklessly created, a risk of public annoyance or alarm by creating a hazardous condition. *See Commonwealth v. Roth*, 531 A.2d 1133, 1137 (Pa. Super. 1987) (holding that a "hazardous condition" involves one where a defendant "create[s] a dangerous situation in which altercations . . . could have occurred," and that intent may be found where an actor intentionally disregards advanced notice against entering or bringing unwanted objects onto a property). Accordingly, Yoder's first issue merits no relief.

In his second issue, Yoder challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, such a challenge is considered a petition for permission to appeal. *See Commonwealth v. Christman*, 225 A.3d 1104, 1107 (Pa. Super. 2019). Before reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (internal citation and brackets omitted).

Here, Yoder filed a timely notice of appeal; preserved his challenge to the discretionary aspects of his sentence in a post-sentence motion for reconsideration; and included a Rule 2119(f) statement in his appellate brief.

- 9 -

Therefore, we review his 2119(f) statement to determine whether he has presented a substantial question for our review. *See Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013).

Whether an appellant has raised a substantial question must be evaluated on a case-by-case basis. *See Moury*, 992 A.2d at 170. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Id*.

In his Rule 2119(f) statement, Yoder indicates that his probationary sentences fall within the standard range of the guidelines. *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (holding that the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines). However, the remainder of Yoder's Rule 2119(f) statement consists of boilerplate case law and statutory provisions with no discussion of how his particular sentences are inconsistent with specific provisions of the Sentencing Code or are contrary to the fundamental norms underlying the sentencing process. Yoder thus fails to raise a substantial question. *See Commonwealth v. Martin*, 727 A.2d 1136, 1143 (Pa. Super. 1999) (holding that when a Rule 2119(f) statement contains mere incantations of statutory provisions and pronouncements of conclusions of law, it is inadequate); *see also Commonwealth v. Gibbs*, 981 A.2d 274,

283–84 (Pa. Super. 2009) (declining to review an appeal from the discretionary aspects of a sentence because the boilerplate Rule 2119(f) statement failed to articulate how the sentence violated a specific provision of the Sentencing Code or was contrary to fundamental norms underlying the sentencing process). Because Yoder fails to raise a substantial question, we decline his petition for permission to appeal the discretionary aspects of his sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/02/2022