540 A.2d 580

**COMMONWEALTH of Pennsylvania**

v.

**ALPHA EPSILON PI, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1987.

Filed April 21, 1988.

James Jubelirer, State College, for appellant.

Sharon L. Potter, Assistant District Attorney, Bellefonte, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

Alpha Epsilon Pi, through David A. Vincoff, was found guilty of disorderly conduct by a district justice and ordered to pay a fine of $50.00 and costs in the amount of $48.50. An appeal of the summary conviction to the common pleas court produced a de novo non-jury trial before the Honorable David E. Grine. The fraternity was again found guilty. The trial court assessed the same fine, plus costs. This direct appeal follows denial of post-verdict motions. We affirm.

Appellant presents two issues for our determination:

1. Did the trial court erroneously overrule defendant's demurrer where the prosecution had been brought under a general provision of the Crimes Code, and a more specific local ordinance was applicable to the factual circumstances alleged?

2. Was the verdict contrary to the evidence and to the weight of the evidence?

With respect to the first issue, we agree with the learned trial court's conclusion that no law or authority exists that mandates that a police officer must charge under a local

ordinance as opposed to a section of the Crimes Code. *Commonwealth v. Brown*, 346 Pa. 192, 29 A.2d 793 (1943), relied upon by Appellant, involved two acts of assembly (the Penal Code and Election Code). Likewise, *Commonwealth v. Buzak*, 197 Pa.Super. 514, 179 A.2d 248 (1962) involved the applicability of a penal provision of the Unemployment Compensation Law as against the Penal Code.

█ In the same vein, *Commonwealth v. Litman*, 187 Pa.Super. 537, 144 A.2d 592 (1958) called upon this court to choose between the provisions of the Medical Act of 1939 and the Penal Code. In *Commonwealth v. Brown*, 269 Pa.Super. 150, 409 A.2d 108 (1979) we were asked to consider the applicability of two separate sections of the Crimes Code, one dealing with forgery, the other relating to unlawful use of credit cards.

*Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847 (1980), like *Brown I, supra*, involved the Election Code and the Crimes Code. Finally, *Commonwealth v. Lawson*, 315 Pa.Super. 84, 461 A.2d 807 (1983) called upon this court to compare and contrast two discrete sections of the Crimes Code.

In all of the cases cited by Appellant, our courts were dealing with either two different statutes enacted by the General Assembly, or specific sections contained within the same statute. Inexplicably, the Commonwealth, through its Brief for Appellee, invites us to consider the Statutory Construction Act of 1972, and particularly 1 Pa.C.S.A. § 1933. We reject this invitation since the Statutory Construction Act is only applicable when construing a general provision in a *statute* which is in conflict with a special provision in the same or another *statute.*

Appellant recognizes, to its credit, that all of the cases upon which it relies for authority are distinguishable from the case now before us, since none of them involves a general statute and a specific ordinance. Appellant points out that former Pa.R.Crim.P. 51 D, prior to its repeal effective January 1, 1986, would have disposed of this issue, since it mandated that a charge be brought under an Act of

Assembly where the same conduct was also proscribed by a local ordinance.

We do not find the repeal of Rule 51 D to be inconsistent with the conclusion we reach. Appellant contends that a prosecution *must* be based on a local ordinance, where the specific provision of the ordinance involves the same conduct as may be proscribed by the Crimes Code. Finding all of the authority advanced by Appellant to be inapposite, and finding no authority for such a proposition through our own research, we reject the first issue as being without merit.

■ As its second issue, Appellant contends that the verdict was contrary to the evidence and to the weight of the evidence. Based upon our review of Appellant's Brief, we will treat this as an attack upon the sufficiency of the evidence, which was properly preserved for review through Appellant's "Motion for New Hearing and in Arrest of Judgment." *See Commonwealth v. Roth*, 366 Pa.Super. 575, 579, 531 A.2d 1133, 1135 (1987).

Our scope of review, as set forth in *Roth, supra* is:

In testing the sufficiency of the evidence, we must view the evidence in a light most favorable to the Commonwealth as the verdict winner and draw all reasonable inferences upon which the fact finder could have properly based its verdict. . . . A determination must be made as to whether there exists sufficient evidence to enable the trier of fact to find, beyond a reasonable doubt, every element of the crime for which the appellant has been convicted.

*Id.*, 366 Pa.Superior Ct. at 579, 531 A.2d at 1135 (citations omitted).

The evidence at the trial came from Officer Michael Territo of the State College Police Department. On Wednesday, August 27, 1986, Officer Territo received a complaint from a borough resident living at 317 East Prospect Avenue. Based upon the call the officer proceeded by patrol car to the 300 Block of East Fairmount, a street

within the borough running parallel to East Prospect and one block distant.

The Alpha Epsilon Pi fraternity occupies a two-story dwelling house at 321 East Fairmount, at the intersection of Locust Lane. There are other fraternity houses nearby. Officer Territo stopped and parked his car one-half block west of the Alpha Epsilon Pi house. He got out of his car, stood beside it, and listened. He heard music coming from within the fraternity house, which was at least fifty yards from where he had stopped.

He then moved his vehicle closer to the fraternity house and established that the same noise he had heard from a distance was coming out of the fraternity house. He observed between thirty and forty people out on the lawn of the fraternity house, drinking beer, laughing and talking. The windows of the fraternity house were open. The noise from the house could easily be heard. Officer Territo considered the amount of noise coming from the house to be unreasonable for that time in the evening.

Officer Territo then went to the door of the house, asked to speak with someone about the noise, and met David A. Vincoff. A citation was issued for disorderly conduct. The elements of disorderly conduct here applicable are as follows:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . .

(2) makes unreasonable noise.

. . . .

(c) **Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of busi-

ness or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503.

Two elements must be proven in order to support a conviction for the summary offense of disorderly conduct. A person must be shown to have made an unreasonable noise. Also, the noise must be made with *either* (a) the intent to cause public inconvenience, annoyance or alarm, *or* (b) recklessly creating a risk thereof.

Appellant argues that neither element has been established.

With regard to the first element, Appellant urges us to apply the standard laid down in *Commonwealth v. Weiner*, 230 Pa.Super. 245, 326 A.2d 896 (1974), a case wherein this court reviewed the constitutionality of the predecessor disorderly conduct statute, Section 406 of the Penal Code of 1939, 18 Pa.C.S. § 4406. There, we quoted, with approval from *Commonwealth v. Greene*, 410 Pa. 111, 189 A.2d 141 (1963) wherein the late Mr. Justice Musmanno determined that noise must be "unseemly" to constitute disorderly conduct, and that "unseemly" is understood to mean "not fitting or proper in respect to the conventional standards of organized society, or a legally constituted community." *Id.*, 410 Pa. at 113, 189 A.2d at 143.

The enactment of the Crimes Code resulted in the elimination of the statutory phrase, "any loud, boisterous and unseemly noise." The present requirement, tracking the Model Penal Code, is that the noise be "unreasonable." None of the appellate cases which have reviewed § 5503 of the Crimes Code since 1973 have been required to examine and construe the term "unreasonable noise" in the context of a music sound system.[1] The statute itself focuses on

---

1. *See, Commonwealth v. Roth, supra* (hazardous or physically offensive condition); *Commonwealth v. Weiss,* 340 Pa.Super. 427, 490 A.2d 853 (1985) (obscene language); *Commonwealth v. Pringle,* 304 Pa.Super. 67, 450 A.2d 103 (1982) (obscene language); *Commonwealth v. Kidd,* 296 Pa.Super. 393, 442 A.2d 826 (1982) (tumultuous behavior or obscene language); *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124

public inconvenience or annoyance. It goes on to include "any neighborhood" within the definition of the word "public." 18 Pa.C.S. § 5503(a), *supra*.

In the case before us, the police officer had proceeded to a borough neighborhood at 11:20 p.m. on a Wednesday night. He went to the area after receiving a complaint from a resident of that neighborhood. Stopping in his car some fifty yards from the Appellant's premises, he heard the sound of music coming from the fraternity house. He observed and overheard a group of thirty or forty people outside the house, on the lawn, laughing, talking and drinking beer. The noise continued up to the time that Officer Territo requested that the volume of the music be turned down. Given the time of day, the officer's ability to hear the noise from a distance of fifty yards during a warm, summer night, and the initial complaint to the officer which was made by a resident living at least one block away, we cannot say that the trier of fact could not have found the noise to have been unreasonable.

Appellant also contends that the necessary element of intent was not shown through Officer Territo's testimony. Appellant argues that one unverified complaint, involving noise coming from a fraternity house along a "fraternity row" can hardly be considered inconvenient, annoying or alarming to the general public. We would first observe that our focus here is not on the general public, or even on the traveling public, as may have been the case under the since-repealed Penal Code. Rather, our focus is on the neighborhood in which the alleged offense occurred.

■ Officer Territo testified that there are other fraternity houses within the immediate neighborhood. But he also testified that within fifteen yards of the subject fraternity house, and in fact just across Locust Lane, non-fraternity house residences are found. We are satisfied that any residences near enough to receive the noise emanating from

(1980) (unreasonable noise/epithet analysis); *Commonwealth v. Hughes,* 270 Pa.Super. 108, 410 A.2d 1272 (1979) (threats and obscenities).

the fraternity house are within the "neighborhood" for purposes of establishing disorderly conduct.

Finally, as set forth above, the intent element may be satisfied on a showing of recklessly creating a risk of public inconvenience or annoyance. Here, a music sound system was operated at 11:20 at night, from a dwelling house with the windows open, such that the sound was heard by a resident living on a parallel street one block distant, and the sound continued such that it was readily heard by an investigating police officer at a distance of fifty yards from the house. These facts are sufficient to permit the trier of fact to find a reckless disregard for public inconvenience and annoyance.

We find both of Appellant's contentions to be without merit. Accordingly, the judgment of sentence is affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I join the Majority's disposition of Appellant's first issue. However, I would not reach that issue insofar as I believe there lacked sufficient evidence to support a conviction for disorderly conduct. "In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228, 1229 (1984).

An essential element of disorderly conduct is that the defendant "[made] unreasonable noise." The testimony at trial, at most, established that one resident of the neighborhood in which the fraternity house was situated called in a noise complaint. Instead of speaking directly with the complainant whose home was approximately one block away from the fraternity house, Officer Territo decided to listen to Appellant's party from 50–60 yards away. From this closer vantage point, the officer made the decision that a disorderly conduct citation was appropriate. I cannot agree with the Majority's conclusion that one unsubstantiat-

186

ed noise complaint, and the subjective view of a police officer stationed very near to the house, manifests a showing of unreasonable noise.

Of greater importance is the fact that notably absent from the record is any testimony that would establish the necessary *mens rea* for disorderly conduct. There is no indication that the fraternity intended to cause any "public inconvenience, annoyance or alarm." Likewise, nothing in the record indicates that Appellant "recklessly" achieved such a result. Recklessness under the statute denotes a conscious disregard of a substantial risk that public annoyance or alarm would result from certain conduct, or a gross deviation from the standard of conduct that a reasonable person would observe under the circumstances. *Commonwealth v. Weiss*, 340 Pa.Super. 427, 434, 490 A.2d 853, 857 (1985). Instantly, Officer Territo admitted at trial that it was a warm evening, the members of the fraternity moved the party outside, and listened to music through open windows. When they were directed to turn the music down, they promptly complied. On this meager evidence alone, I do not agree that Appellant's conduct amounted to recklessness. Therefore, I am of the opinion that the judgment should be reversed.