J-A22026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KELLY SANDERS | |
| Appellant | No. 2150 MDA 2014 |

Appeal from the Judgment of Sentence December 3, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-SA-0000264-2014

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:             **FILED AUGUST 28, 2015**

Appellant Kelly Sanders appeals from the December 3, 2014 judgment of sentence[1] entered in the Lancaster County Court of Common Pleas, following her bench trial conviction for disorderly conduct.[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court's sentencing order is not included in the certified record.  In her notice of appeal, Appellant refers to the docket, which reflects the court's December 3, 2014 order.  In her brief, Appellant quotes the following from the order, but does not provide a copy:

> …find her guilty of the offense of Disorderly Conduct beyond a reasonable doubt, imposing a fine of $300 plus costs.

Appellant's Brief at 2.

[2] 18 Pa.C.S.§ 5503(a)(2).

On May 26, 2014,[3] Lancaster City police officers responded to a call for a domestic disturbance from an apartment on 139 College Avenue. Officer William Hamby could hear a woman yelling when he exited his police car. He and Officer Jay Hatfield approached the apartment from which the yelling and the sound of glass breaking was emanating.

When the officers knocked on the door, the yelling stopped. The officers looked through the window and found the apartment to be "destroyed" with a broken table, chairs, guitar and shattered glass. Police continued to knock on the door, and Appellant eventually emerged from the bathroom. Officers told her to come to the window, but she refused. She told them they were at the wrong apartment. She began to walk away from the officers, and Officer Hatfield tased her. She fell to the ground. The police officers entered the apartment, placed Appellant in handcuffs, and brought her outside to be checked by Emergency Medical Services ("EMS") personnel, pursuant to police policy. Appellant was wearing only a long t-shirt and underwear, and her less than two-year-old child was asleep in the apartment at this time. While EMS was evaluating Appellant, police officers called Children and Youth Services ("CYS") to attend to the child.

_____

[3] The trial court 1925(a) Opinion mistakenly lists the date of the offense as March 26, 2014. The docket and notes of testimony, however, reflect otherwise.

Appellant began screaming at the EMS employees. Officers issued approximately six warnings to Appellant to lower her voice, but she continued to scream and tell EMS personnel that she did not want them to examine or evaluate her. She screamed obscenities at them, and neighbors came outside to see the commotion. Officer Hatfield thought Appellant was drunk because she had glassy eyes and smelled of alcohol. Appellant said that she had consumed only one drink around 5:00 p.m. Eventually, EMS gave up on examining Appellant and left. Appellant was issued a citation for disorderly conduct.

The court conducted a hearing on December 3, 2014, at which Officer Hatfield, Officer Hamby, and Appellant testified. Appellant claimed she was only protesting to EMS personnel touching her against her will. She submitted that any mother would have objected when removed from her sleeping child. She contended that she was sleeping when officers arrived and that there had been no yelling in the apartment. She claimed the apartment was messy because she and her boyfriend were in the process of moving, but she denied anything being broken. The court found the officers' testimony credible, and discredited Appellant's testimony. The court convicted Appellant of disorderly conduct and fined her $300.00.

On December 18, 2014, Appellant timely filed a notice of appeal. The next day, the court ordered her to file a concise statement of errors

complained of on appeal pursuant to Pa.R.A.P. 1925(b), and she timely complied on January 5, 2015.

Appellant raises the following issues for our review:

DID [APPELLANT'S] ACTIONS IN PROTESTING LOUDLY ABOUT BEING EXAMINED BY EMS PERSONNEL AGAINST HER WISHES CONSTITUTE UNREASONABLE NOISE UNDER THE CIRCUMSTANCES?

DID THE COMMONWEALTH [PRESENT] SUFFICIENT EVIDENCE THAT [APPELLANT'S] YELLING PRODUCED THE LEVEL OF NOISE THAT WAS INCONSISTENT WITH NEIGHBORHOOD TOLERANCE OR STANDARDS?

WERE [APPELLANT'S] ACTIONS AND WORDS IN PROTESTING THE POLICE ACTIONS AGAINST HER PROTECTED UNDER HER RIGHT TO FREE SPEECH?

Appellant's Brief at 4.

We shall address Appellant's first two issues together. Appellant challenges the sufficiency of the evidence for her disorderly conduct conviction. She claims that she did not yell to cause public inconvenience or recklessly create a risk of it. She claims that she yelled for the legitimate purpose of telling the EMS personnel that she did not want treatment and she did not want them to offensively touch her. She argues that it was reasonable to yell considering that she had been tased for no reason, while unarmed in her apartment and having just woken up, and that she was now in a parking lot, wearing only a t-shirt and underwear, while her baby was alone in the apartment. She concludes that her protests did not constitute an unreasonable noise under the circumstances, and the Commonwealth failed to produce sufficient evidence that her yelling was inconsistent with

the neighborhood tolerance or standards to support her conviction for disorderly conduct. We disagree.

"Whether sufficient evidence exists to support the verdict is a question of law; thus, [an appellate court's] standard of review is *de novo* and [its] scope of review is plenary." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa.2014) *cert. denied sub nom. Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). When examining a challenge to the sufficiency of evidence, we employ the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Disorderly conduct is defined by statute:

> **§ 5503. Disorderly conduct**
>
> **(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> \* \* \*
>
> (2) makes unreasonable noise
>
> \* \* \*

18 Pa.C.S. § 5503.

Further, this Court has observed:

> "The *mens rea* requirement of Section 5503 demands proof that appellant by her actions intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm." **Commonwealth v. Gilbert**, 4674 A.2d 284 ([Pa.Super.]1996). The specific intent requirement of this statute "may be met by a showing of a reckless disregard of the risk of public inconvenience," annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. **See Commonwealth v. Kidd**, 442 A.2d 826 ([Pa.Super.]1982).
>
> In disorderly cases based on one's making unreasonable noise, this Court has looked to language content *only* to infer whether the speaker *intended* to cause public annoyance, alarm, etc. Ultimately, however, what constitutes the *actus reus* of "unreasonable noise" under the disorderly conduct statute is determined solely by the *volume of the speech,* not by its content.

**Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa.Super.2005).

"Pennsylvania law defines unreasonable noise as 'not fitting or proper in respect to the conventional standards of organized society or a legally

- 6 -

constituted community.'" **Commonwealth v. Forrey**, 108 A.3d 895, 898 (Pa.Super.2015) (quoting **Commonwealth v. Gilbert**, 674 A.2d 284, 287 (Pa.Super.1996)). This Court examined the unreasonable noise necessary to constitute disorderly conduct in **Forrey, supra**:

> [A] defendant's single, profane outburst yelled at a neighbor across the street at 9:45 p.m. was deemed insufficient unreasonable noise to constitute disorderly conduct. [**Commonwealth v. Maerz**, 879 A.2d 1267, 1270 (Pa.Super.2005)]. The Commonwealth failed to show that the outburst jeopardized the public peace, or that the noise was "absolutely **inconsistent with the residential neighborhood's tolerance levels or standards.** No evidence was offered as to why the public peace in this particular neighborhood could not survive a passing, albeit very loud, vocal noise during evening hours." **Id.** at 1271 (emphasis added).
>
> Similarly, in [**Commonwealth v. Gilbert**, 674 A.2d 284 (Pa.Super.1996)]*,* we found insufficient evidence of unreasonable noise where the defendant "openly disagreed" with a police officer who was towing his neighbor's car. **Gilbert**, 674 A.2d at 285–86. At best, the record reflected that the defendant spoke to the officer and yelled across the street to his neighbor. **Id.** at 287. "The arresting officer testified that half the neighbors eventually came out to the street to view the 'ruckus.' However, no evidence was produced that that the level of noise was **inconsistent with neighborhood tolerance or standards**." **Id.** (emphasis added).
>
> In contrast, in **Commonwealth v. Alpha Epsilon Pi,** 540 A.2d 580, 583 ([Pa.Super.]1988), we affirmed a disorderly conduct citation of a college fraternity where noise from its late-night partying could be heard fifty yards away from the fraternity house.
>
> > Given the time of day, the officer's ability to hear the noise from a distance of fifty yards during a warm, summer night, and the initial complaint to the officer which was made by a resident living at least one

> block away, we cannot say that the trier of fact could not have found the noise to have been unreasonable.

*Id.*

*Forrey*, 108 A.3d at 898-99.

Here, the Commonwealth presented sufficient evidence to support Appellant's disorderly conduct conviction. Specifically, two police officers testified that they responded to a call from neighbors for a domestic disturbance. Upon arriving at the scene, police officers could hear yelling and breaking glass from their police vehicles. After Appellant had been tased and brought to the parking lot for evaluation by EMS personnel, Appellant began to scream obscenities. Several neighbors came out of their homes to watch Appellant yell. Although there was testimony that neighbors could have come outside to see the ambulance and police cars, the court did not have to believe this was the only reason people exited their homes. *See Hansley, supra.*

Further, a police officer testified that he could hear the yelling when he returned to his car, about ¼ block away from the scene. Police officers asked Appellant to lower her voice several times, but she refused and seemed intoxicated. She yelled profanities and eventually EMS personnel determined they could not evaluate Appellant and left. Although Appellant testified that her yelling was reasonable under the circumstances of the situation, the court, as the trier of fact, was free to believe all, some, or none of the evidence presented. We cannot say that the trier of fact could

not have found the noise to have been unreasonable. *See Forrey, supra*; *Alpha Epsilon Pi, supra.* Thus, there was sufficient evidence for the court to find Appellant made an unreasonable noise that intentionally or recklessly created a risk of causing a public inconvenience, annoyance or alarm.[4]

In her third issue, Appellant argues that her constitutional right to complain about police conduct outweighs any inconvenience society experienced during the incident. She claims her conviction for disorderly conduct under 18 Pa.C.S. § 5503 violated her constitutional right to free speech. We disagree.

"As the constitutionality of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Omar*, 981 A.2d 179, 185 (Pa.2009).

This Court "has repeatedly determined that Article I, § 7 [of the Pennsylvania Constitution] affords greater protection to speech and conduct in this Commonwealth than does its federal counterpart, the First Amendment." *Melvin v. Doe*, 836 A.2d 42, 47 (Pa.2003) (internal

---

[4] Appellant's conviction for disorderly conduct is based on the unreasonable noise she made while she was in the parking lot and arguing with police officers and EMS personnel. We note that police officers brought Appellant to the parking lot for an EMS evaluation pursuant to police policy regarding tasers. We further note that Appellant does not challenge the propriety of police tasing her in her home originally, so that issue is not before this Court.

quotations and citations omitted). The Pennsylvania constitution provides, in relevant part:

### § 7. Freedom of press and speech; libels

The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

Pa. Const. art. I, § 7.

However, the right to free speech is not absolute:

"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no

question under that instrument.' ***Cantwell v. Connecticut***, 310 U.S. 296, 309-310, 60 S.Ct. 900, 905-906, 84 L.Ed. 1213." (Footnotes omitted.)

***Commonwealth v. Mastrangelo,*** 414 A.2d 54, 58 (Pa.1980).

Specifically, regarding free speech and disorderly conduct, our Supreme Court has held that:

> [A] state, in a valid exercise of its police power, may enact laws to protect the public peace even though such ordinances may curtail free speech or assembly. ***Commonwealth v. Mastrangelo***, 414 A.2d 54, 58 ([Pa.]1980). ***See: Chaplinsky v. New Hampshire,*** 315 U.S. 568, 571–572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (right of free speech found not to be absolute where language tends to incite an immediate breach of the peace). Instantly, we do not share Appellants' view that the phrase "creates a hazardous or physically offensive condition" could be used to punish anyone exercising a protected First Amendment right. Our legislature specifically limited the breadth of the statute in subsection (a) which states that the offense of disorderly conduct requires an "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Thus, we are of the opinion that the statute demonstrates a narrowly confined exercise of the Commonwealth's police powers, which cannot be utilized to prohibit constitutionally protected conduct.

***Commonwealth v. Roth***, 588, 531 A.2d 1133, 1140 (Pa.Super.1987).

Although Appellant is correct that she has a right to free speech, this right is not absolute. This Court has held that the disorderly conduct statute demonstrates a narrowly confined exercise of the Commonwealth's police powers. ***See Roth, supra.*** Because the statute is constitutional, it can be enforced. Thus, Appellant's claim that the law infringes on her constitutional rights is meritless.

- 11 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015