J. A02032/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRIAN PAUL SIMPSON, | : | No. 324 WDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered January 30, 2019,
in the Court of Common Pleas of Lawrence County
Criminal Division at No. CP-37-SA-0000092-2018

BEFORE:  SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 10, 2020**

Brian Paul Simpson appeals ***pro se*** from the January 30, 2019 judgment of sentence of a $300 fine plus the costs of prosecution imposed after he was found guilty in a trial ***de novo*** of disorderly conduct.[1]  After careful review, we affirm the judgment of sentence.[2]

The trial court summarized the relevant facts of this case as follows:

> On Thursday, April 5, 2018, Trooper Jerel T. Smith and Trooper Robert Cox were working the midnight to 8[:00] A.M. shift out of the New Castle Barracks of the Pennsylvania State Police.  The Pennsylvania State Police received a noise complaint about shooting at around 3:00 A.M. made by [appellant's] neighbor, either John Argiro or his wife.  The State Police dispatch contacted [appellant] and requested him to proceed to a nearby Dollar General so the responding

---

[1] 18 Pa.C.S.A. § 5503(a)(2).

[2] The Commonwealth has not filed a brief in this matter.

officers could speak to him safely. Trooper Smith was first dispatched to the house of John Argiro before meeting [appellant] at the Dollar General with Trooper Cox.

Trooper Smith had been involved with a previous call in March of that year where he and another officer warned [appellant] to not shoot his firearm at that time of night or he would probably be cited. The same procedure of meeting at the Dollar General was used in the prior incident. [Appellant] was not charged based on this prior incident.

Returning to the night of the charged behavior, at 2:50 A.M., Troopers Smith and Cox arrived at Argiro's residence, who was the complainant in the previous encounter between [appellant] and Trooper Smith.

Argiro testified [appellant] would fire his gun in the general orientation towards his residence, not to shoot at the residence, but such that he could see the light from the muzzle flash. Argiro did not see a flash on the particular incident in question.

Argiro also testified that [appellant] does not shoot during the daytime, only in the early morning.

While it was clear Argiro and [appellant] were having a personal dispute and some of the Argiro testimony was disputed, this court credited these basic facts as credible.

When contacted about the shooting on April 5, [2018] Trooper Smith indicated the reason [appellant] gave for shooting at that time was because he did not like some lights [that] shone into his bedroom and disturbed his sleep.

This court credited Trooper Smith as credible.

Trial court opinion, 4/12/19 at 1-3 (citations to notes of testimony and footnotes omitted).

Appellant was found guilty of disorderly conduct by the magisterial district judge and appealed to the Court of Common Pleas of Lawrence County. On January 29, 2019, appellant proceeded to a trial *de novo* and was found guilty of one count of disorderly conduct in violation of Section 5503(a)(2). The trial court found appellant not guilty of disorderly conduct under Sections 5503(a)(1), (3), and (4). That same day, the trial court sentenced appellant to pay a $300 fine plus the costs of prosecution. This timely *pro se* appeal followed.[3]

Appellant raises the following issues for our review:

1. Was it prejudicial to [appellant's] rights for the trial court to change an essential element of the charge that appellant was convicted of at the summary court, during the trial, when [a]ppellant was neither charged with or convicted of that charge, and the charge was not indicated as such on the citation?

2. Was the evidence sufficient to prove that [a]ppellant intentionally caused or recklessly risked a public inconvenience, annoyance or alarm by target shooting on his five acre property in a rural neighborhood where target shooting and hunting is common?

3. Was it an abuse of the trial court[']s discretion to not allow [a]ppellant to elicit testimony from the witness when [the]witness opened the door to this testimony and that his testimony was not hearsay, but in fact circumstantial evidence that he was aware of the North Beaver Township Police determination that [a]ppellant was legally in compliance with Pennsylvania law while

---

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

target shooting on his private property, and was that determination correct?

4. Did appellant[']s use of his private target shooting range after daylight hours violate 18 P[a.]C.S.A. [§] 5503(a)(2) when the [trial] court said using it during day light [sic] hours did not?

5. Does 34 P[a.]C.S.A. [§] 2507(b)(4) and 35 P.S. [§] 4501 prevail over 18 P[a.]C.S.A. [§] 5503(a)(2) in providing immunity from prosecution for making noise from target shooting while on one's own private target shooting range?

6. Was 18 P[a.]C.S.A. [§] 5503(a)(2) unconstitutional as applied to appellant[']s use of his target shooting range in after dark hours?

Appellant's brief at 4-5.[4]

We begin by addressing appellant's claim that he is immune from prosecution for disorderly conduct, based on the purported statutory defense set forth in Section 2507(b)(4) of the Game and Wildlife Code, 34 Pa.C.S.A. § 101 **et seq**. (**Id.** at 38-52.) We disagree.

Here, appellant was found guilty of one count of disorderly conduct in violation of Section 5503(a)(2), which provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . **makes unreasonable noise**[.]" 18 Pa.C.S.A. § 5503(a)(2) (emphasis added). "Pennsylvania law

---

[4] For the ease of discussion, we elect to address appellant's claims in a different order than presented in his appellate brief.

defines unreasonable noise as not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." ***Commonwealth v. Forrey***, 108 A.3d 895, 898 (Pa.Super. 2015) (citations and internal quotation marks omitted). Under this standard, the Commonwealth must prove "that the noise here was unreasonable, ***i.e.***, inconsistent with neighborhood tolerance or standards." ***Id.*** at 899 (citation omitted).

Section 2507(a) of the Game and Wildlife Code governs restrictions on shooting and provides as follows:

> **(a)** **General rule.--**It is unlawful for any person during the open season for the taking of any big game other than turkey to:
>
> (1) Shoot at any mark or target other than legal game or wildlife with a firearm of any kind or a bow and arrow.
>
> (2) Discharge at any time any firearm or release an arrow at random in the general direction of any game or wildlife not plainly visible for the purpose of routing or frightening them.
>
> (3) Discharge at any time any firearm or release an arrow at random or in any other manner contrary to this section.

34 Pa.C.S.A. § 2507(a).

Section 2507(b), in turn, sets forth several exceptions to this general prohibition against "target shooting" during open hunting season[5] by allowing target practice at an approved location. Specifically, Section 2507(b)(4) provides as follows:

> **(b) Exceptions.--**This section shall not be construed to apply in any manner to:
>
> . . . .
>
> (4)  Shooting at a properly constructed target or mark or a dead tree protected by a natural or artificial barrier so that the ball, bullet or arrow cannot travel more than 15 yards beyond the target aimed at, after making due allowance for deflection in any direction not to exceed an angle of 45 degrees. Target shooting shall only be lawful when it is done:
>
> > (i)  Upon property owned by the shooter or by a guest of the property owner.
> >
> > (ii)  Within 200 yards of the camp or other headquarters where the person shooting is quartered or is an invited guest or visitor.

34 Pa.C.S.A. § 2507(b)(4).

---

[5] "Open season" is defined in 34 Pa.C.S.A. § 102 as "the indicated periods of the calendar year and the daily hours during which game or wildlife may be legally hunted, taken or killed and includes both the first and the last day of the season or period of time designated by this title or by regulation of the commission." ***Id.***

Here, appellant's reliance on Section 2507(b)(4) as a purported defense to his disorderly conduct charge is misplaced because the exceptions set forth in Section 2507(b) only apply to those offenses listed in Section 2507(a), and not the disorderly conduct statute, which is essentially a noise control law. *See Forrey*, 108 A.3d at 898-899; *see also* 34 Pa.C.S.A. § 2507(b)(4) (noting exceptions to Section 2507(a)).  Appellant was not charged with violating Section 2507(a), and accordingly, his claim is meritless.

In a related claim, appellant contends that the trial court erred in failing to interpret 35 P.S. § 4501 to provide him with "immunity from prosecution for making noise from target shooting while on one's own private target shooting range."  (Appellant's at 5, 53-57.)  Again, we disagree.

> When addressing a question of statutory construction, our standard of review is *de novo* and the scope of our review is plenary. *Commonwealth v. Barbaro*, 94 A.3d 389, 391 (Pa.Super. 2014) (citation omitted). Interpretation of a statute is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S.[A.] § 1501 *et seq.*, which has as its paramount tenet that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *Commonwealth v. Hart*, [28 A.3d 898, 908 (Pa. 2011)] (quoting 1 Pa.C.S.[A.] § 1921(a)).

*Commonwealth v. Markun*, 185 A.3d 1026, 1029 (Pa.Super. 2018) (internal quotation marks and brackets omitted; citation formatting amended).

Section 4501 of Title 35, Health and Safety, governs the general immunity provided to owners of shooting ranges from any civil or criminal action based on noise or noise pollution, and provides as follows:

> All owners of rifle, pistol, silhouette, skeet, trap, blackpowder or other ranges in this Commonwealth shall be exempt and immune from any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from the normal and accepted shooting activity on ranges, provided that the owners of the ranges are in compliance with any applicable noise control laws or ordinances extant at the time construction of the range was initiated. If there were no noise control laws or ordinances extant at the time construction of the range was initiated, then the immunity granted by this act shall apply to said ranges.

35 P.S. § 4501.

The crux of appellant's claim on appeal is premised on his belief that his private property qualifies as a shooting range under Section 4501. Although the term "shooting range" is not defined in the statute, our review of the record supports the trial court's determination that "[appellant's] informal activity of target shooting on his property does not make him an owner of a range for the purposes of Section 4501." (Trial court opinion, 4/12/19 at 13.) As the trial court properly recognized in its opinion, such a finding

> would lead to a near infinite variety of absurd results if all shooting on one's own property was to be immunized from noise control. . . . [T]he extreme informality of [appellant's] specific shooting activity makes it difficult for this court to characterize him as an 'owner of a range' even wh[en] that phrase is taken in a very broad sense.

*Id.*

In any event, even if this court were to construe appellant's property as a shooting range for purposes of Section 4501, the immunity provided for in

this section applies only to "the normal and accepted shooting activity on ranges[.]" 35 P.S. § 4501. Appellant's act of repeatedly shooting his firearm in the pitch black at approximately 3:00 a.m. on a weeknight in an area with neighboring residential properties with children can hardly be considered a "normal and accepted shooting activity" in any community, rural as it may be. (*See* notes of testimony, 1/29/19 at 5-11, 28; *see also* 35 P.S. § 4501.) The interpretation of Section 4501 urged by appellant is clearly unreasonable. If that interpretation were followed, it would favor the private interest of the owner of such a shooting range over the interests of all adjoining landowners. Accordingly, appellant's purported defense under Section 4501 must fail.

Appellant also argues that the citation charging him with disorderly conduct violated his due process rights (*see* appellant's brief at 11-21); that there was insufficient evidence that he possessed the requisite *mens rea* to recklessly create a risk of public inconvenience, annoyance, or alarm sufficient to sustain his conviction under Section 5503(a)(2) (*see* appellant's brief at 22-30); and that the Commonwealth failed to prove: (a) he created a public harm or inconvenience because he was on his private property at the time the shooting occurred (*see id.* at 31-34), and/or (b) the noise he created was inconsistent with the standards of the neighborhood (*see id.* at 35-37).

Our review reveals that the trial court authored a comprehensive and well-reasoned opinion that thoroughly addresses and disposes of appellant's remaining claims. Accordingly, we adopt the pertinent portions of the trial

court's April 12, 2019 opinion as our own for purposes of this appellate review of these claims. (***See*** trial court opinion, 4/12/19 at 3-6, 9-11.)

For all the foregoing reasons, we affirm the trial court's January 30, 2019 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2020

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

                 VS.                 : LAWRENCE COUNTY, PENNSYLVANIA

BRIAN PAUL SIMPSON,         : SUMMARY APPEAL

           Defendant.    : NO. 92 OF 2018

## APPEARANCES

For The Commonwealth:        Jonathan R. Miller, Esq.
                                Office of the District Attorney
                                430 Court Street
                                New Castle, PA 16101

For The Defendant:           Pro Se

## OPINION

COX, J.                                         April 12, 2019

This Opinion is authored pursuant to Pa.R.A.P. 1925(a).

Brian Paul Simpson appealed to the Court of Common Pleas from the guilty finding by the magisterial district judge. This court held a de novo trial on January 29, 2019. This court found Simpson guilty of violating 18 Pa.C.S.A. § 5503(a)(2). Simpson filed a notice of appeal on February 26, 2019. This court ordered the preparation of a Pa.R.A.P. 1925(b) Concise Statement of the Errors Complained of on Appeal. Simpson filed the Concise Statement on March 21, raising six errors.

The facts which make up this case are as follows:

On Thursday, April 5, 2018, Trooper Jerel T. Smith and Trooper Robert Cox were working the midnight to 8 A.M. shift out of the New Castle Barracks of the Pennsylvania

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

**FILED/ORIGINAL**

2019 APR 12 PH 2: 07

JODI KLABON-ESOLDO
PRO AND CLERK

State Police.[1] The Pennsylvania State Police received a noise complaint about shooting at around 3:00 A.M. made by Simpson's neighbor, either John Argiro or his wife. The State Police dispatch contacted Simpson and requested him to proceed to a nearby Dollar General so the responding officers could speak to him safely.[2] Trooper Smith was first dispatched to the house of John Argiro before meeting Simpson at the Dollar General with Trooper Cox.

Trooper Smith had been involved with a previous call in March of that year where he and another officer warned Simpson to not shoot his firearm at that time of night or he would probably be cited.[3] The same procedure of meeting at the Dollar General was used in the prior incident. Simpson was not charged based on this prior incident.[4]

Returning to the night of the charged behavior, at 2:50 A.M., Troopers Smith and Cox arrived at Argiro's residence, who was the complainant in the previous encounter between Simpson and Trooper Smith. [5]

Argiro testified Simpson would fire his gun in the general orientation towards his residence, not to shoot at the residence, but such that he could see the light from the muzzle flash.[6] Argiro did not see a flash on the particular incident in question.[7]

Argiro also testified that Simpson does not shoot during the daytime, only in the early morning.[8]

---

[1] Notes of Testimony, January 29, 2019, p. 31, 34.
[2] Notes of Testimony, January 29, 2019, p. 32, 35.
[3] Notes of Testimony, January 29, 2019, p. 31-33.
[4] This court considers this warning for the sole purpose of the due process reliance doctrine discussed herein.
[5] Notes of Testimony, January 29, 2019, p. 35.
[6] Notes of Testimony, January 29, 2019, p. 6, 29.
[7] N.T., January 29, 2019, p. 9.
[8] N.T., January 29, 2019, p. 10.

FILED/ORIGINAL

2019 APR 12 PM 2: 07

2

JODI KLABON-ESOLDO

While it was clear Argiro and Simpson were having a personal dispute and some of the Argiro testimony was disputed, this court credited these basic facts as credible.

When contacted about the shooting on April 5, Trooper Smith indicated the reason Simpson gave for shooting at that time was because he did not like some lights which shone into his bedroom and disturbed his sleep.[9]

This court credited Trooper Smith as credible.

### Did the citation comport with Due Process?

Simpson's first claim of error is that this court violated his due process rights because the original citation and this court's guilty finding with regard to Section 5503(a)(2) do not comport with the requirement of a formal charge under the Sixth Amendment to the United States Constitution.

Simpson is correct that the right to formal charges is guaranteed under the Sixth Amendment.

"The right to formal notice of charges in a criminal proceeding is guaranteed by the Sixth Amendment to the United States Constitution and is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to jurisdiction of the court. Formal accusation and specific charge enables a defendant to properly defend and protect himself from further prosecution of the same offense, and enables the court to determine the sufficiency of the prosecution's case to support a conviction." Com. v. Borriello, 696 A.2d 1215, 1217 (Pa. Cmwlth. Ct. 1997) (citing Com. v. Goldblum, 447 A.2d 234 (Pa. 1982)).

For summary offenses, Pa.R.Crim.P. 403(a)(6)[10] provides: "(A) Every citation shall contain: (6) a citation of the specific section and subsection of the statute or ordinance

---

[9]N.T., January 29, 2019, p. 36.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

3

allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged;"

The citation in the present case charges a violation of 18 Pa.C.S.A. § 5503(a)(1), (2), (3), and (4). As these subsections all relate to very different fact patterns under the general umbrella of disorderly conduct, the citation plainly violates the requirement that the defendant is given notice of the specific section and subsection under which he is charged.

The remedy for violation of this rule is not universally dismissal. Actual prejudice against the defendant is required for that remedy. Pa.R.Crim.P. 109 says: "A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, *and the defect is prejudicial to the rights of the defendant*." (emphasis added).

"Such prejudice will not be found where the content of the citation, taken as a whole, prevented surprise as to the nature of summary offenses of which the defendant was found guilty of at trial, or the omission does not involve a basic element of the offense charged." Com. v. Nicely, 988 A.2d 799, 807 (Pa. Cmwlth. Ct. 2010) (cleaned up).

The citation in the present case provides notice of the general section under which he was charged, Section 5503(a), and then states: "To Wit SIMPSON did fire his rifle at 0300 hrs. on a school night which caused the public to be annoyed and alarmed."

---

[10] Borriello deals with Rule 53 of the Rules of Criminal Procedure. As to subsection (a)(6), Rule 53 and its replacement Rule 403 are facsimiles.

This final sentence of the citation cannot be read except as a noise-based citation. Section 5503(a)(2) is the sole section which dealt with noise. The superfluous charging of the other subsections did not cause prejudice to Simpson, and his citation should not be dismissed on this basis.

The second claim of error by Simpson consists of two subclaims.

### i. Did the Commonwealth sufficiently prove the *mens rea* element?

First is the general claim he did not have the intent required under Section 5503.

The intent element of Section 5503 requires the Commonwealth to prove, at a minimum, the defendant recklessly created a risk of public inconvenience, annoyance, or alarm.

In Com. v. Alpha Epsilon Pi, 540 A.2d 580 (Pa. Super. 1988), the Superior Court reviewed the question of whether loud music could constitute unreasonable noise. "[T]he intent element may be satisfied on a showing of recklessly creating a risk of public inconvenience or annoyance. Here, a music sound system was operated at 11:20 at night [on a Wednesday], from a dwelling house with the windows open, such that the sound was heard by a resident living on a parallel street one block distant, and the sound continued such that it was readily heard by an investigating police officer at a distance of fifty yards from the house. These facts are sufficient to permit the trier of fact to find a reckless disregard for public inconvenience and annoyance." Id. at 583-584.

Here, a gun was fired multiple times at around 3:00 A.M. on a Thursday. The shots were fired outside and were heard from a residence around 200 yards away. Based on Alpha Epsilon Pi, the facts were clearly sufficient to find reckless disregard for public inconvenience and annoyance. Additionally, Simpson had a specific grievance

about lights shining through his window, which he told Trooper Smith when he was contacted about his shooting on April 5, 2018. This specific grievance and Simpson's response to that grievance further support the conclusion he had intent to cause public inconvenience, annoyance, or alarm.

### ii.   Does the due process reliance doctrine bar the prosecution?

The second subclaim is that the North Beaver Township Police told him his shooting was legal, and that controls the outcome of this case.

The due process reliance doctrine, sometimes called entrapment by estoppel, is an exception to the maxim that mistake of law is no defense and is raised when a defendant alleges he relied on official statements which affirmed the legality of certain behavior. Com. v. Kratsa , 764 A.2d 20, 31 (Pa. 2001). While the defense forecloses prosecution should it apply, it is "rarely available," and arises "in a narrow set of unique and compelling circumstances." Id. at 31, 32.

Pennsylvania has adopted a four-factor approach in applying the due process reliance defense.

"First, in order to support invocation of the doctrine, most jurisdictions require that there be an affirmative representation that certain conduct is legal... Second, the representation should be made by an official or a body charged by law with responsibility for defining permissible conduct respecting the offense at issue. Third, actual reliance upon the official's statements should be present... Finally, the view is commonly held that reliance must be in good faith and reasonable given the identity of the government official, the point of law represented, and the substance of the statement. Reliance is reasonable and in good faith only where a person truly desirous of obeying the law would

53RD
JUDICIAL
DISTRICT

LWRENCE COUNTY
PENNSYLVANIA

6

have accepted the information as true, and would not have been put on notice to make further inquiries." Id. at 32-33 (numerous citations omitted). The party seeking to apply the defense bears the burden of proving each element. Id. at 33.

Simpson fails multiple aspects of this test.

First, Simpson must prove there was an affirmative representation that certain conduct is legal. Simpson points to statements of North Beaver Township Police in allegedly assuring him his conduct was legal. While Simpson argues these statements were made, their contents were never brought into evidence by any means. Throughout the de novo trial, Simpson attempted on cross-examination of the Commonwealth's witnesses to present these statements through hearsay and argument, but neither the substance of the statements nor their speaker was ever admitted. No North Beaver Township official was called to testify or appeared at the hearing. Simpson fails the first factor.

Second, no evidence was introduced about who on the North Beaver Township Police made an affirmative statement and in what context the statement was made. These are critical factors under the due process reliance doctrine and must be shown even when an affirmative statement is made. The context of the statement is important to provide evidence about whether an individual should justifiably rely or it was just laxity of enforcement. Laxity of enforcement is insufficient to justify the application of the doctrine. Id. at 33.

In Cox v. Louisiana, 379 U.S. 559 (1965), the highest police officials of a city interpreted a statute prohibiting demonstrations "near" a courthouse. Id. at 572. These high police officials, in the presence of the sheriff and mayor of the city, told

53RD
JUDICIAL
DISTRICT

LWRENCE COUNTY
PENNSYLVANIA

7

demonstrators they could protest across the street from the courthouse. Later, the sheriff ordered the group to disperse, contradicting the previous interpretation which was made in his presence. The demonstrators were charged with violations of the courthouse proximity statute.

In Raley v. Ohio, 360 U.S. 423 (1959), the Un-American Activities Commission of the State of Ohio held a hearing in which it examined individuals relating to Communist Party activities of several individuals. At one point in testimony, the Chairman of the Commission erroneously told a witness: "I should like to advise you under the Fifth Amendment, you are permitted to refuse to answer questions that might tend to incriminate you. * * * But you are not permitted to refuse to answer questions simply for your own convenience." Id. at 426-427. Later, this witness and others were prosecuted for contempt of the commission for their refusal to answer questions.

The Supreme Court in both of these cases reversed the convictions based on the reliance on official interpretations, but in each case, the officials making the interpretation were in high-ranking positions. The Supreme Court emphasized in Raley the Chairman of the Commission was in a *clear* position to give such assurances: "the Chairman of the Commission, who *clearly* appeared to be the agent of the State in a position to give such assurances"; "the State *clearly* had told him was available to him"; "they were the voice of the State." (emphases added).

Due process reliance will not apply in most circumstances when there is an erroneous interpretation of the law by a party who is not generally in charge of performing such interpretation. In this case the record does not provide any clarification

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

8

about who told Simpson he could shoot and in what context. It was Simpson's burden to demonstrate these facts.

Finally, the Court does not find it credible Simpson actually relied, in good faith, on the statements of a member of the North Beaver Township Police. Simpson's behavior indicates he would only accept statements which affirmed his belief his conduct was legal. Trooper Smith testified that prior to the April incident for which Simpson is charged here, he and Trooper Young responded to a call at 2:00 A.M. or 3:00 A.M. and informed Simpson he could not shoot his gun at that time of night. Simpson's continued use of his firearm at that time of night indicates both he was not "truly desirous of obeying the law" and undermines the reliance Simpson may have had on the North Beaver Township Police being "the voice of the State."

Simpson's argument on these bases is unpersuasive.

### Did the Commonwealth sufficiently prove public harm?

Simpson's third claim of error is that there was insufficient evidence of the public harm element because the complainant and the Defendant both were on their own private properties. "Being in public is necessary to convict, both for the Defendant and Complainant. The Court stated Defendant was in a public area. He was not. He was on his private property at all times that the target shooting occurred."[11]

"(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (2) makes unreasonable noise." 18 Pa.C.S.A. § 5503(a)(2).

"(c) Definition.--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among

---

[11] Concise Statement of the Errors Complained of on Appeal, Error 3.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

9

the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, *any neighborhood,* or any premises which are open to the public." 18 Pa.C.S.A. § 5503(c) (emphasis added).

Simpson engaged in target shooting in a neighborhood with multiple properties. Argiro testified his house was between 150-200 yards from Simpson's property where he was shooting.

Simpson need not have been on public property in order to cause public inconvenience under Section 5503. Sound which emanates out from private property into a neighborhood can constitute a violation even if all parties involved are on private property. Alpha Epsilon Pi, supra.

**Did Simpson's shooting fit within the normal noisiness of the neighborhood?**

Simpson's fourth claim of error is that his firing of a firearm at 3:00 A.M. is not unreasonable noise because it fits within the general noise profile of the neighborhood in which his shooting happened.

Simpson is correct that the relative noisiness of a neighborhood is relevant to the charge of disorderly conduct. He also appropriately defines the test for unreasonable noise under Pennsylvania law. "Noise must be "unseemly" to constitute disorderly conduct, and that "unseemly" is understood to mean "not fitting or proper in respect to the conventional standards of organized society, or a legally constituted community." Alpha Epsilon Pi, 540 A.2d at 583.

Alpha Epsilon Pi again presents factual and argumentative similarity to the present case. There, the fraternity argued because the neighborhood was on "fraternity

row", where presumably the noise cited did not significantly deviate from the normal range of noise in that area. Id. at 583. The Superior Court did not put much weight on that argument. Id. While persuasive, this issue did not appear to be the central question of Alpha Epsilon Pi.

In the present case, Defendant was shooting his firearm at 3:00 A.M. on a weeknight. His shots could be heard from inside another house 150-200 yards away.

As examples of why this noise fit within the regular noise of the neighborhood, Simpson elicited testimony that residents of the neighborhood, including Argiro, would hunt during the daytime and that fireworks were also common in the summertime at night and during the daytime. This court, in judging the facts of the case, finds a qualitative difference between the recreational use of fireworks in the summertime, fireworks in the daytime, shooting in the daytime, as compared to the shooting the Defendant did at 3:00 A.M. The shooting at this time of night was outside of the noise which fit within the conventional standards of this neighborhood.

Additionally, as part of the fourth claim of error, Simpson argues the Court should have allowed him to continue to develop the line of questioning about the standards of the neighborhood. The transcript of the de novo trial reflects this court allowed Simpson to develop this area of fact development.[12] During that development, this court only stopped the questioning on three occasions, first when examination became argumentative, second, when repetitive questions were asked, and third when Simpson asked a question relating to the witness' opinion about the legality of fireworks.

At no time did this court prevent Simpson from factually developing the area of the relative noise in the neighborhood.

---

[12] Notes of testimony, January 29, 2019, pp. 18-23.

53RD
JUDICIAL
DISTRICT

\WRENCE COUNTY
PENNSYLVANIA

11

## Errors 5 and 6: Is there a statutory defense to the prosecution?

The fifth and sixth claims state this court erred in not applying 34 Pa.C.S.A. § 2507(b)(4) and 35 P.S. § 4501 as exempting Simpson's behavior from the charge of Disorderly Conduct.

34 Pa.C.S.A. § 2507(a) states: "It is unlawful for any person during the open season for the taking of any big game other than turkey to: (1) Shoot at any mark or target other than legal game or wildlife with a firearm of any kind or a bow and arrow. (2) Discharge at any time any firearm or release an arrow at random in the general direction of any game or wildlife not plainly visible for the purpose of routing or frightening them. (3) Discharge at any time any firearm or release an arrow at random or in any other manner contrary to this section."

34 Pa.C.S.A. § 2507(b) creates exceptions to the summary offense created by subsection (a). "(b) Exceptions.--*This section* shall not be construed to apply in any manner to: (4) Shooting at a properly constructed target or mark or a dead tree protected by a natural or artificial barrier so that the ball, bullet or arrow cannot travel more than 15 yards beyond the target aimed at, after making due allowance for deflection in any direction not to exceed an angle of 45 degrees. Target shooting shall only be lawful when it is done: (i) Upon property owned by the shooter or by a guest of the property owner." (emphasis added).

Simpson is not charged under Section 2507(a). The 2507(b)(4) defense does not apply to all offenses, only those listed under 2507(a).

As to the application of 35 P.S. 4501, that section states: "All owners of rifle, pistol, silhouette, skeet, trap, blackpowder or other ranges in this Commonwealth shall

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

be exempt and immune from any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from the normal and accepted shooting activity on ranges, provided that the owners of the ranges are in compliance with any applicable noise control laws or ordinances extant at the time construction of the range was initiated. If there were no noise control laws or ordinances extant at the time construction of the range was initiated, then the immunity granted by this act shall apply to said ranges."

This court would hold as a matter of law that Simpson's informal activity of target shooting on his property does not make him an owner of a range for the purposes of Section 4501. While Section 4501 does not include a definitions section, it would lead to a near infinite variety of absurd results if all shooting on one's own property was to be immunized from noise control. While there would be marginal situations of course, and this court does not intend to limit the definition to solely commercial ranges, the extreme informality of Simpson's specific shooting activity makes it difficult for this court to characterize him as an 'owner of a range' even what that phrase is taken in a very broad sense.

For the sake of a full consideration of the question, a discussion of the field follows:

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a).

A review of the legislative history of Section 4501 reveals some discussion of the purpose of the statute around the time of its enactment. In the 1987-1988 Session, Section 4501 was enacted as part of HB1818. During the senate's consideration of the

13

bill, Senator Greenwood offered the statement: "The intent of the author of this legislation and its chief sponsors in this and the other House correctly want to protect shooting ranges from nuisance suits or from overregulation that would inhibit them from being enjoyed *by their members.*" 1988 Legis. J. No. 35, 2225 (emphasis added).

This statement moderately implies that the intent of the legislature was to immunize organized shooting ranges, rather than to immunize every sportsman who wants to put up a target in their backyard without limit.

The Court also conducted a review of other states to determine if there were similar statutes which may have been a reference in the construction of the Pennsylvania statute. Unfortunately, Pennsylvania adopted its statute in 1988, and of the many other states which immunize shooting ranges against noise, it appears all comparable statutes were enacted after that date.

That being said, a review of these statutes indicates broad legislative agreement among the several states that it would be prudent to protect shooting ranges when they are properties that are truly designed for shooting sports. The states have different methods of preserving this limitation. Ohio requires "a facility operated for the purpose of shooting with firearms or archery equipment.." Ohio R.C. § 1533.83. Alaska requires "[a]n area designed and used for rifle shooting..." Ala. Code § 6-5-341.[13]

Given the broad agreement among states to not include all shooters in the definition of shooting range, as well as the statement of Senator Greenwood at the time of the Pennsylvania enactment, it is reasonable to infer the intent of the legislature fell

---

[13] See also Brief for Respondent, Lone Pine Hunters' Club, Inc. RESIDENTS DEFENDING THEIR HOMES, et al., v. LONE PINE HUNTERS' CLUB, INC., Town of Hollis & Town of Hollis Planning Board., 2006 WL 4649234 (N.H.) (providing a helpful listing of many state statutes on this topic).

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

14

within this broad agreement and did not intend to reach informal backyard shooting ranges in its protection.

Moreover, the disorderly conduct statute is a noise control law. The immunity created by Section 4501 provides a carve-out for noise control laws which were extant at the time of the enactment of 4501. As the disorderly conduct statute was extant at the time of the passing of 4501, it applies to Defendant.

In any event, Section 4501 should be considered an affirmative defense. The burden of proof and the burden of persuasion for affirmative defenses rest on the party raising that defense. Section 4501's immunity only applies to 'normal and accepted shooting activity.' Simpson's case did not present any evidence his behavior fell within normal and accepted shooting activity. Under any circumstances, it is hard for this court to imagine it is normal and accepted shooting activity to shoot at 3 A.M. on a weeknight in open-air in an area which has neighboring residential properties. In fact, the testimony he elicited from John Argiro made clear the normal shooting activity in that area was confined to daytime hunting. Accordingly, under the facts presented, Simpson's behavior fell outside the normal and accepted shooting activity of the community in which it occurred.

The conviction should be affirmed.

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2019 APR 12 PM 2: 07

JODI KLABON-ESOLDO

15